# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

ANTHONY FOWLKES                                                                              PLAINTIFF

v.                                          4:17CV00664-BRW-JTK

TIM RYALS, et al.                                                                          DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.Why the record made before the Magistrate Judge is inadequate.

2.Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.  Introduction

Plaintiff Anthony Fowlkes, an inmate incarcerated at the Faulkner County Detention Center (Jail), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging failure to protect, deliberate indifference to medical needs, and unconstitutional conditions of confinement claims while incarcerated at the Jail (Doc. No. 6).

This matter is before the Court on the Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 37-39). Plaintiff filed a Response to the Motion (Doc. No. 40).

## II.  Amended Complaint

Plaintiff complained the Jail was overcrowded, with most "pods" containing double their population, and that it caused long-term psychological effects. (Doc. No. 6, p. 2) Plaintiff was placed in an eight-man pod which contained a total of eighteen inmates at one point, some who were required to sleep on the floors next to showers and toilets. (Id., p. 3) Plaintiff also complained that he was assaulted three times, beginning on July 10, 2017. (Id.) On that date, inmate Joe Staley, who was infected with hepatitis-C, bit Plaintiff on the side of his face. (Id.) Plaintiff alleged Staley was a known bully and trouble-maker and no Jail officials acted to prevent

2

his actions. (Id.) He also claimed Jail officials denied him medical treatment after the incident. (Id.) The next assaults occurred on September 10, 2017 at approximately 3:00 a.m., when fellow inmate Toliver threw a cup of pee on Plaintiff while sleeping, and then repeated the same action later that morning with a cup of pee mixed with soap. (Id., p. 4) Plaintiff notified the jailers after the second incident and no action was taken against Toliver. (Id.)   Since the Jail "pods" are over-populated, many fights, assaults, and robberies occur, causing Plaintiff to constantly fear for his safety. (Id., p. 5) Defendants are responsible for running the Jail and for the assaults and fights which occur. (Id., pp. 5-6)   After Plaintiff was attacked in July, 2017, Dr. Stewart never properly treated him and Plaintiff remained unaware of whether he became infected with hepatitis-C. (Id., p. 7)   Stewart also failed in his duty to provide proper psychological care and treatment to the Plaintiff. (Id.)

### III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997).   "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"   Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)).   "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'"   Id. at 1135.   Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for

summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Official Capacity

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed, because he did not allege that their actions were taken pursuant to an unconstitutional policy, practice, or custom, or any widespread pattern of unconstitutional conduct. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Defendants present proof of numerous Jail policies governing medical and mental health care, housing and sanitation, segregation, sick call and grievance procedures. (Doc. No. 39-6) However, Plaintiff provided no evidence of an on-going custom of denying medical care or medication to inmates, or failing to properly care for the facilities and the health and safety of the inmates. Absent such an allegation, the Court finds the monetary claims against Defendants in their official capacities should be dismissed.

### B. Individual Capacity

Defendants also ask the Court to dismiss Plaintiff's claims against them in their individual capacities, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a

question of law, not a question of fact.  McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005).   Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1]   Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 1)     Exhaustion

Defendants first ask the Court to dismiss Plaintiff's mental health claims for failure to file a grievance, as required by the Jail grievance procedure, § 009. (Doc. No. 39-6, pp. 9-10) According to the affidavit of Chris Riedmueller, Jail Administrator, the Jail has a documented grievance procedure, which Plaintiff used on multiple occasions. (Doc. No. 39-1, p. 2) However, Plaintiff failed to file any grievances regarding his claim that he was denied medical treatment for an alleged psychological and/or psychiatric illness while at the Jail. (Id.)   The Prison Litigation

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

Reform Act (PLRA) requires that all administrative remedies be exhausted prior to the filing of a lawsuit. 42 U.S.C. §1997e. Plaintiff does not dispute this fact set forth by the Defendants; therefore, absent proof of having filed a grievance concerning this issue, the Court finds it should be dismissed.

### 2) Failure to Protect/Denial of Medical Care

Plaintiff alleges he was assaulted on three occasions, on the dates of July 10, 2017, and September 10, 2017. According to the evidence provided by the Defendants, Plaintiff was evaluated by medical staff on July 11, 2017, following an altercation with another inmate, and was treated for a bite wound on the right side of his face. (Doc. No. 39-4, pp. 1-2). Dr. Stewart evaluated Plaintiff on July 13, 2017, ordered blood tests, and prescribed Plaintiff an antibiotic. (Id., p. 3) Plaintiff underwent the tests on July 14, 2017, and on July 15, 2017, the results showed that he was not infected with Hepatitis-C. (Id., pp. 4-11) During this time, Plaintiff filed several grievances about the incident, and the responses from Jail officials indicated the incident was investigated and transferred to the prosecutor for his evaluation. (Doc. No. 39-3)

Although Plaintiff alleged inmate Toliver threw pee on him on two occasions on September 10, 2017, there is no record of this incident, or of a grievance. There is a record that on October 4, 2017, Plaintiff filed a grievance that several named inmates threatened him, and in response, Defendants moved those inmates away from Plaintiff. (Doc. No. 39-3, p. 3.

According to Plaintiff's Amended Complaint, he was incarcerated at the Jail both as a pretrial detainee and as an inmate serving a misdemeanor sentence. Therefore, in the abundance of caution, the Court will analyze his claims under the due process standard of the Fourteenth Amendment, which applies to such claims. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the

Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, in order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that Defendants were deliberately indifferent to Plaintiff's need for safety, and that they were aware of facts from which an inference could be drawn that a substantial risk of serious harm existed. Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998). Plaintiff claimed in his complaint that since Defendants knew the cells were overcrowded, they were aware of Plaintiff's risk of harm from others. However, he does not deny that he did not report a threat of harm from inmates Staley or Toliver prior to the incidents which occurred. He also did not allege that either of those inmates threatened him prior to the actions which occurred, or that he feared harm from those inmates. The evidence also contradicts Plaintiff's claims that Defendants refused to act after the first incident occurred, as the grievance responses show that the matter was investigated and forwarded to the prosecutor for his evaluation. Therefore, absent evidence that Defendants knew of a threat of harm to the Plaintiff prior to the occurrences, the Court finds as a matter of law that they were not deliberately indifferent to a risk of harm.

Similarly, Plaintiff failed to show that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their

7

medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

In this case, the medical records clearly show that Plaintiff was treated after the incident by medical personnel, evaluated by Defendant Dr. Stewart two days later, and underwent blood tests, which showed no infection. Defendant Stewart also prescribed Plaintiff antibiotics, which Plaintiff refused to take on three consecutive days. (Doc. No. 39-3, p. 5) If Plaintiff complains about a delay in medical treatment, he provides no proof that Defendants caused the delay or that he suffered harm as a result.

### 3) Conditions

In determining when pretrial detention is considered unconstitutionally punitive, the courts apply the Eighth Amendment deliberate indifference standard, focusing on the length of time of exposure to the allegedly unconstitutional conditions. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a

8

single, identifiable human need such as food, warmth, or exercise.'" Id., (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

"Although the Eighth Amendment's prohibition of cruel and unusual punishment bars more than physical torture, 'discomfort compelled by conditions of confinement, without more, does not violate the amendment.'" Martin v. Byrd, No. 4:07cv01184SWW, 2008 WL 686936 * 4 (E.D.Ark.2008) (quoting Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (other citations omitted.))

Plaintiff alleged unconstitutional overcrowding of his "pod," and that many inmates were forced to sleep on the floor. He did not allege that he was forced to sleep on the floor, and according to the Affidavit of Chris Riedmueller, all inmates are provided mats and can move to bunks as they become available. (Doc. No. 39-1, p. 2) An allegation of overcrowding, alone, is insufficient to support a due process violation. A.J. by L.B. v. Kierst, 56 F.3d 849, 854 (8th Cir. 1995). Furthermore, as noted above, Plaintiff provided no facts to support his contention that Defendants were deliberately indifferent to his health and safety needs, or that they deliberately disregarded known threats of harm to him. Therefore, the Court finds that this allegation fails to support a constitutional claim for relief.

In conclusion, absent additional facts or evidence from Plaintiff to show otherwise, the Court finds that Defendants acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

## IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment

(Doc. No. 37) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 29th day of August, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE